UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ATHANASIOS VLAHOPOULOS,

                Plaintiff,

          v.

ROSLYN UNION FREE SCHOOL DISTRICT, SCOTT ANDREWS and CHRISTOPHER ROTH,

                Defendants.
------------------------------------------------------------------X

Docket No. 21 Civ. 00063 (ARL)

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants ROSLYN UNION FREE SCHOOL DISTRICT, SCOTT ANDREWS, and CHRISTOPHER ROTH, by their attorneys, Sokoloff Stern LLP, under Local Civil Rule 56.1, submit the following statement of undisputed material facts:

**Procedural History**

1. On January 6, 2021, defendants removed this action from the Nassau County Supreme Court. (*See* ECF Docket Entry No. 1.)

2. On March 5, 2021, District Judge Gary R. Brown held a pre-motion conference on defendants' request to file a pre-answer motion to dismiss, at which time plaintiffs Anathasios Vlahopoulos and Elizabeth Vlahopoulos were afforded 60 days to amend the complaint. (*See* ECF Docket Entry No. 15.)

3. On May 6, 2021, plaintiffs filed an amended complaint alleging violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (Ex. A.)[1]

4. On May 28, 2021, Judge Brown held a pre-motion conference and issued a ruling from the bench: a) dismissing plaintiff Elizabeth Vlahopoulos from the case; b) dismissing the

---
[1] Copies of all referenced documents are attached to the accompanying Declaration of Adam I. Kleinberg submitted in support of defendants' motion.

case against defendants Sarah Januszewski, Arshan Pazooki, and Allison Brown; c) dismissing plaintiff Anathasios Vlahopoulos' Fifth Amendment and due process claims against the remaining defendants; d) denying the remaining defendants' qualified immunity motion; and e) denying the remaining defendants' motion as to plaintiff Anathasios Vlahopoulos' Fourth Amendment, *Monell*, and equal protection claims. (*See* ECF Docket Entry No. 26.)

5. The remaining defendants, Roslyn Union Free School District (the "District"), Scott Andrews, and Christopher Roth answered the Amended Complaint on May 31, 2021. (Ex. B.)

**The Parties**

6. The District is a public school district located in Roslyn, New York. (Ex. A, ¶ 11; Ex. B, ¶ 11.)

7. Plaintiff Athanasios ("Tommy") Vlahopoulos attended the District's Roslyn High School from 2017-2021. (Ex. C.)

8. Defendant Scott Andrews ("Principal Andrews") served as the Roslyn High School Principal and defendant Christopher Roth ("Dean Roth") served as the Roslyn High School Dean of Students during Tommy's years as a student at Roslyn High School. (Ex. D, 29:07-29:09; Ex. E, 05:20-06:04.)

**Tommy's Disciplinary History**

9. Throughout high school, Tommy had a history of cutting classes, being disruptive, and altercations with students. (Ex. D, 22:05-23:08, 35:14-36:21, 38:11-39:02; Ex. F; Ex. G; Ex. H; Ex. I; Ex. J; Ex. K; Ex. L.)

10. In September 2017, at the beginning of Tommy's freshman year in high school, Tommy was issued a disciplinary warning for exhibiting willful disrespect to a school official. (Ex. F.)

11. In January 2019, during Tommy's sophomore year, Tommy engaged in a physical confrontation with another student in the high school cafeteria. (Ex. D, 22:05-23:08; Ex. G.)

12. Tommy admits he got "a little aggressive" in the January 2019 cafeteria incident, grabbing another student by the shirt and pulling him around. (Ex. D, 23:05-23:08.)

13. Tommy was suspended for 3 days for the January 2019 cafeteria incident. (Ex. H.)

14. Tommy was also disciplined for skipping class in March and April 2019. (Ex. I; Ex. J.)

15. In September 2019, at the start of Tommy's junior year, Tommy threw a granola bar across a classroom and hit another student in the eye. (Ex. D, 35:14-36:21; Ex. K.)

16. Tommy admitted throwing the granola bar and claimed he had been joking. (Ex. D, 35:14-36:21.)

17. The District suspended Tommy for the September 2019 granola bar incident. (Ex. K.)

18. In October 2019, during Tommy's junior year, plaintiff skipped one of his classes for a full week. (Ex. D, 38:11-39:02; Ex. L.)

19. Tommy received five days of detention for skipping classes in October 2019. (Ex. D, 38:24-39:02.)

**District Policies on Electronic Smoking Devices**

20. On November 28, 2017, Principal Andrews and Dean Roth issued a memo to all District families advising of an update to the student code of conduct. (Ex. M.)

21. The November 28, 2017 memo addressed the District's concerns with student usage of electronic smoking devices. (Ex. M.)

22. The code of conduct was updated to prohibit the use and/or possession of electronic smoking devices on campus. (Ex. M.)

23. The high school's student handbook (the "Student Handbook") provides, under the section "Smoking and Vaping:"

> Smoking and vaping anywhere on school property is strictly prohibited according to Board of Education policy and New York State Law. Any person violating this law is subject to a civil fine and school disciplinary action.

(Ex. N at D00733.)

24. The Student Handbook also provides, under the section "Illegal Substances:"

> Students may not be under the influence or any illegal substance or alcohol. Other illegal substance violations include:
>
> • Smoking or any tobacco product and use is not permitted anywhere on school grounds
> • Possession of controlled substances or illegal substances and related paraphernalia
> • Distribution or attempt to distribute, or possession with the intent to distribute, a non-controlled substance upon the representation that the substance is a controlled, dangerous substance.
> • Alcohol consumption by students.

(Ex. N at D00723).

25. District Board of Education ("BOE") Policy 5300.30(E)(13) similarly prohibits the use or possession or electronic smoking devices. (Ex. O at D00784).

26. Subsection (E)(14) of BOE Policy 5300.30 prohibits the possession, consumption, sale, or distribution of illegal substances, inclusive of marijuana products. (Ex. O at D00784).

**District Policies on Student Searches**

27. BOE Policy No. 5300.60 is entitled "Student Searches and Interrogations." (Ex. O at D00806-D00809.)

28. Under BOE Policy 5300.60, any school official authorized to impose a disciplinary penalty on a student may question a student about an alleged violation of law or the district code of conduct. (Ex. O at D00806.)

29. Under BOE Policy 5300.60, school officials questioning students shall advise each student why he/she is being questioned, but are not under an obligation to contact a student's parents before such questioning. (Ex. O at D00806.)

30. Under BOE Policy 5300.60, an authorized school official, including district security officials, may conduct a search of students and their belongings if they have reasonable suspicion to believe the search will result in evidence that the student violated the law or District code of conduct. (Ex. O at D00806.)

31. Under BOE Policy 5300.60, searches will be limited to the extent necessary to locate the evidence sought and, whenever practicable, conducted in the privacy of administrative offices. (Ex. O at D00807.)

32. BOE Policy 5300.60(B), entitled Strip Searches, provides:

> A strip search is a search that requires a student to remove any or all of his/her clothing. For purposes of this provision, "clothing" does not include an outer coat or jacket. Searching a student's shoes, socks and sweatshirt, and the exposure of a student's ankles and waistband does not constitute a strip search where the student is not asked to remove his/her shirt or pants.

> Strip searches are intrusive in nature and are not permissible. If school authorities believe there is an emergency situation that could threaten the health or safety of others, the student under reasonable suspicion of having engaged or engaging in unlawful or otherwise proscribed activity shall, to the extent practicable, be isolated and secured. Police and parents will be contacted immediately

(Ex. O at D00807.)

33. The District does not conduct strip searches of students. (Ex. P, 69:20-69:22.)

**District Policies on Harassment or Bullying**

34. The Student Handbook provides the following definition of "Harassment or Bullying:"

> The creation of a hostile environment by conduct or by threats, intimidation or abuse, including cyberbullying, that (a) has or would have the effect of unreasonably and substantially interfering with a student's educational performance, opportunities or benefits, or mental, emotional or physical well-being; or (b) reasonably causes or would reasonably be expected to cause a student to fear for his or her physical safety; or (c) reasonably causes or would reasonably be expected to cause physical injury or emotional harm to a student; or (d) occurs off school property and creates or would foreseeably create a risk of substantial disruption within the school environment, where it is foreseeable that the conduct, threats, intimidation or abuse might reach school property. For purposes of this definition, the term "threats, intimidation or abuse" shall include verbal and non-verbal actions. Acts of bullying and harassment that are prohibited include but are not limited to those acts based on a person's actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender, or sex.

(Ex. N at D00721.)

35. The definition in the paragraph above is identical to the one found within BOE Policy No. 5300.10. (Ex. O at D00771.)

36. BOE Policy 5300.15, entitled Student Rights and Responsibilities, provides, in part:

> B. Student Responsibilities
>
> All district students have the responsibility to:
>
> 1. Contribute to maintaining a safe, supportive, and orderly school environment that is conducive to learning and to show respect and dignity to other persons and to property.

(Ex. O at D00774.)

37. The Student Handbook defines Cyberbullying as "Harassment or bullying as defined above, where such harassment or bullying occurs through any form of electronic communication." (Ex. N at D00721.)

38. The Student Handbook provides that, "Reports of bullying, harassment and discrimination will be promptly investigated in accordance with District policies and procedures." (Ex. N at D00735.)

39. BOE Policy 5300.30, entitled Prohibited Student Conduct, provides, in part:

> A student may be subject to disciplinary action, up to and including suspension from school, when the student engages in the following conduct on school property or at a school function:
>
> **A. Engages in conduct that is disorderly. Examples of disorderly conduct include, but are not limited to:**
>
> 1. Fighting or threatening behavior.
> 2. Disturbing any lawful assembly or meeting of persons.
> 3. Creating a hazardous physically offensive condition by any act that serves no legitimate purpose.

> 4. Defacing school property.
> 5. Running in hallways.
> 6. Making unreasonable noise.
> 7. Using language or gestures that is profane, lewd, vulgar or abusive.
> 8. Obstructing vehicular or pedestrian traffic.
> 9. Engaging in any willful act which disrupts the normal operation of the school community.
> 10. Trespassing. Students are not permitted in any school building, other than the one they regularly attend, without permission from the administrator in charge of the building.
> 11. Computer/electronic communications misuse, including any unauthorized use of personnel electronic equipment, such as, but not limited to, cell phones, iPods, iPads and computers, software, or an Internet/Intranet account; accessing inappropriate websites; or any other violation of the District's Acceptable Use Policy.
> 12. Using skates, skateboards, roller blades, scooters or bicycles on school grounds. This shall not prohibit students from appropriately riding their bicycles to and from school in a non-disruptive or disorderly manner and securing same in the designated area at the indicated place/time.
> 13. Violating cafeteria behavioral expectations. Food is to be eaten only in the cafeteria or designated areas. Students are expected to sit on chairs or benches and not to have their feet on tables. There is to be no throwing or misuse of food.
> 14. Violating traffic regulations on school property.
> …

(Ex. O at D00781-D00782.)

40. BOE Policy 5300.30(E) prohibits conduct that endangers the safety, morals, health or welfare of others, including but not limited to bullying and cyberbullying. (Ex. O at D00783-D00784.)

41. BOE Policy 5300.30(H) prohibits off-campus misconduct such as cyberbullying that endangers the health and safety of students or staff within the school, or creates or would

foreseeably create a risk of substantial disruption in within the school environment. (Ex. O at D00785.)

**District Policy Regarding Extra-Curriculars**

42. The Student Handbook contains a section entitled, "Special Note Regarding Participation in Extra-Curricular Activities," which provides:

> Participation in extra-curricular activities at Roslyn High School is a privilege. Student participation on athletic teams and clubs, and attendance at sports events and all other school-sponsored events and activities, including but not limited to: OCC events, the Junior Dance, Senior Party and Senior Prom is dependent upon adherence to the school's Code of Discipline.

(Ex. N at D00765.)

**District Policies Regarding Disciplinary Action**

43. The Student Handbook section entitled, "Range of Disciplinary Actions," details the range of potential disciplinary actions for violations of the code of conduct, including suspension from athletic participation (No. 7.) and suspension from school (No. 21.). (Ex. N at D00729-D00730.)

44. The Student Handbook also provides that previous disciplinary warnings and actions will be taken into account when disciplinary action is considered. (Ex. N at D00730.)

45. BOE Policy 5300.40 provides factors to consider in a disciplinary decision, including the student's prior disciplinary records, the nature of the offense, and circumstances leading to the offense. (Ex. O at D00787-D00788.)

46. BOE Policy 5300.40 provides that, "as a general rule, disciplinary action will be progressive." (Ex. O at D00787-D00788.)

47. Like the Student Handbook, BOE Policy 5300.40(A) identifies potential penalties, including suspension from athletic participation and suspension from school for a violation of school policy. (Ex. O at D00788-D00789.)

**Communication of District Policies**

48. BOE Policy No. 5300.75, entitled Dissemination of Code of Conduct, provides the means in which students, parents, and staff are all provided with copies of the code of conduct in the student handbook and BOE policies. (Ex. O at D00811-D00812.)

**The First Alleged Search**

49. In plaintiff's freshman year, a District gym teacher named Mr. Gerula found Tommy and his friend in the bathroom stalls of the gym locker room in between class periods. (Ex. D, 15:24-16:18, 17:19-17:24.)

50. Tommy alleges that Mr. Gerula was not his teacher, but "accuses all kids of doing stuff wrong." (Ex. D, 17:19-17:24.)

51. Tommy was in the stall next to his friend who was using a nicotine vape. (Ex. D 15:24-16:04.)

52. Tommy was brought to the office of the Athletic Director, Mr. Brostowski. (Ex. D, 19:11-19:13.)

53. Mr. Brostowski "searched" Tommy in his office. (Ex. D, 19:13-19:14.)

54. The search consisted of making Tommy empty his pockets from the inside out (described as looking like "elephant ears") and pull his socks down over his shoes. (Ex. D, 19:20-20:13.)

55. The Athletic Director sat behind a desk and did not put his hands in Tommy's pockets or on his socks. (Ex. D, 20:14-20:24.)

56. Tommy had no problem emptying his pockets or lowering his socks as directed. (Ex. D, 20:02-20:07, 20:25-21:06.)

57. Tommy was aware that students kept electronic smoking devices in their socks. (Ex. D, 21:07-21:10.)

58. At no time did a school official touch plaintiff during this search. (Ex. D, 20:14-20:21.)

59. After Mr. Brostowski finished, Tommy was brought to the nurse's office (Ex. D, 19:11-19:19.)

60. Tommy was accused of having bloodshot eyes. (Ex. D, 15:19-15:22.)

61. The nurse searched Tommy's wrestling team bag. (Ex. D, 19:11-19:19.)

62. Tommy's friend was found to be in possession of a Juul nicotine vaping device. (Ex. D, 16:21-16:24.)

63. Tommy was not suspended or disciplined. (Ex. D, 21:21-21:25.)

**The Report of Tommy Bullying Arshan and Selling THC Products**

64. On or about November 19, 2020, during Tommy's junior year, two Roslyn High School students named Arshan Pazooki ("Arshan") and Sarah Januszewski informed Dean Roth that Tommy had been bullying Arshan and posting videos of the bullying online and that Tommy was also selling drugs in school. (Ex. P, 13:08-13:25, 22:16-23:13, 63:18-64:08, 66:12-67:04.)

65. The two students who reported the allegations against Tommy were not confidential informants of Defendants. (Ex. P, 69:12-69:16.)

66. Defendant Roth viewed social media videos Tommy posted that showed Tommy and his friends bullying Arshan. (Ex. P, 13:12-21:05.)

67. Dean Roth also reviewed these events on the high school's security cameras. (Ex. D, 89:17-90:22, 94:03-97:24; Ex. Q at D00650, D00651, and D00652.)

68. In the video bates stamped as D00651, Arshan can be seen at 00:18 on the right side in a grey hoodie, and Tommy is seen in a red sweatshirt on the left side at 00:33 and following towards Arshan. (Ex. D, 90:24-91:09, 92:03-07; Ex. Q at D00651.)

69. In the video bates stamped D00652, Arshan can be seen at 00:16 in a grey hoodie, Tommy's friend Jake can be seen at 00:22 in a beige shirt pursuing Arshan, and Tommy can be seen in a red sweatshirt pursuing them at 00:25. (Ex. D, 94:11-94:25, 96:07-96:16; Ex. Q at D00652.)

70. In the video bates stamped D00650, Arshan can be seen running near the yellow school bus around 00:11 and both Tommy (holding his phone) and his friend Jake can be seen running directly behind Arshan. (Ex. Q at D00650.)

71. Plaintiff used his cell phone to record videos of incidents with Arshan, which Tommy posted on his Instagram account. (Ex. D, 100:04-100:25, 111:02-111:25, 114:22-115:06, 116:03-116-10; Ex Q at D00650.)

72. Plaintiff used his Instagram account to post videos showing him and his friends chasing Arshan around school and into Arshan's car in the school parking lot. (Ex. D, 46:17-47:25, 61:24-62:24, 85:19-85:24, Ex. R at D00653 and D00656.)

73. Plaintiff's Instagram posts also included a racial slurs and threats of violence. (Ex. R, at D00653 and D00656.)

74. A caption under one of Tommy's Instagram posts read: "Nigga, meet me outside school I'll DA [dead ass] run you over. But won't send me the addy [address], SMH [shaking my head]. He rlly hid behind the security guard too. A caption under a separate video read: "He FW12.

Not the tribe," and the post also included a skeleton emoji. (Ex. D, 101:02-103:11; Ex. R at D00653.)

75. FW12 meant "fucked with the security guards," and Tommy believed Arshan must have been friends with them. (Ex. D, 102:19-102:11.)

76. Plaintiff also posted a video of himself knocking on the door of a car that Arshan was in and calling him a "pussy." (Ex. D, 80:05-80:08, 84:24-85:07, 120:08-120:13; Ex. R at D00653.)

77. Tommy posted the video with a caption that read: "Nigga won't hit me. All talk," and included a laughing emoji. (Ex. D, 119:25-120:07; Ex. R at D00653.)

78. Tommy claims he says the "N word" sometimes because "My friends don't get offended. I'm friends with a lot of black kids. They don't care." (Ex. D, 86:25-87:06.)

79. Tommy is not black. (Ex. D, 85:15-85:16.)

80. On this same day, Dean Roth also viewed images of drug paraphernalia provided to him by Arshan and Sarah from a social media account using the name "Tommy V." (Ex. P, 66:23-67:20; Ex. S.)

81. Plaintiff Anathasios Vlahopoulos is commonly known as "Tommy" at Roslyn High School. (Ex. P, 67:21-68:04.)

82. On those images were the words "Roslyn Harbor." (Ex. P, 68:05-68:17; Ex. S.)

83. After viewing these images, Dean Roth was concerned that Tommy could have been selling THC cartridges at Roslyn High School. (Ex. P, 68:05-68:17.)

84. Posting drug paraphernalia on social media is a common way for students to communicate they are selling drugs. (Ex. D, 64:13-64:21.)

13

**The Second Alleged Search**

85. On November 19, 2019, Dean Roth called Tommy into his office around the beginning of 7th period. (Ex. D, 41:08-41:25, 65:15-65:18, 67:08-67:10.)

86. Dean Roth had Tommy wait in a room next to his office while he spoke with two of Tommy's friends. (Ex. D, 33:13-33:19.)

87. During the beginning of eighth or ninth period Defendant Roth spoke with Tommy. (Ex. D, 67:08-67:15.)

88. Dean Roth did not strip search Tommy. (Ex. P, 70:17-70:19.)

89. Dean Roth did not put his hands on Tommy. (Ex. P, 70:23-71:02.)

90. Dean Roth had the District's Director of Security, Keith Macias, present with him while meeting with Tommy. (Ex. D, 47:18-47:25; Ex. P, 70:03-70:10.)

91. Macias did not strip search Tommy. (Ex. P, 70:11-70:12.)

92. Macias did not put his hands on Tommy. (Ex. P, 70:13-70:15.)

93. Dean Roth had Tommy take off his shoes and roll down his socks below his heel. (Ex. D, 55:02-55:03, 57:04-57:19; Ex. E, 33:20-33:25.)

94. Tommy was asked if he had a t-shirt underneath his hoodie. (Ex. P, 70:22-70:24.)

95. When Tommy said yes, Tommy was asked to take off his hoodie, but not the t-shirt underneath. (Ex. D, 55:02-55:18; Ex. P, 70:22-71:10.)

96. There was never a time Tommy was not wearing the t-shirt in Dean Roth's office. (Ex. D, 55:19-55:21.)

97. Dean Roth asked Tommy to lift his t-shirt, but at no point was his t-shirt off. (Ex. D, 55:16-55:24; Ex. P, 71:09-71:10.)

98. Dean Roth also had Tommy raise the legs of his sweatpants to his knees. (Ex. D 57:04-54:19.)

99. Tommy was also asked to empty his pants pockets inside-out so they looked like elephant ears. (Ex. D, 58:09-58:24.)

100. Tommy was not asked to pull his waistband out from his pants. (Ex. D, 47:15-47:17; Ex. P, 72:02-72:03.)

101. Tommy did not take off his pants during the search. (Ex. D, 47:11-47:14; Ex. P, 70:16-70:18.)

102. Dean Roth also searched Tommy's two friends separately. (Ex. D, 45:12-46:22.)

103. Dean Roth found drug paraphernalia in Tommy's friend's socks when he met with them. (Ex. D, 58:21-59:05; 61:16-20; 66:12-67:07.)

104. Tommy's friend received a suspension for possession of a THC cartridge. (Ex. D, 59:04-59:08.)

**The November 19, 2019 Suspension**

105. The District suspended Tommy for five days for posting videos of bullying on social media, harassing another student on school property, and posting drug paraphernalia. (Ex. D 41:05-41:07; 42:18-42:23; Ex. E, 51:07-57:12; Ex. T.)

106. On November 19, 2019, Principal Andrews sent a letter to Tommy's parent that read, in part:

> Your child's suspension is based on the following: Athanasios posted (4) videos bullying and harassing another student. In the 4th video, Athanasios banged on the window of the car the student was sitting in and called him a "pussy" two times while bating him to exit the car. In addition, Athanasios posed drug paraphernalia.

15

(Ex. T.)

107. Principal Andrews was not at the school on November 19, 2019, but was informed of what happened and authorized Dean Roth to sign his name on the suspension letter. (Ex. U, 10:20-11:12.)

108. Tommy alleges he had been made captain of the high school wrestling team for his junior year. (Ex. D, 10:13-10:19, 11:18-11:24.)

109. Tommy's wrestling coach, Coach Nguyen, gave him that position. (Ex. D, 72:16-72:25.)

110. Tommy's wrestling coach removed him as team captain after the November 19, 2019 suspension through around "January-ish" of 2020. (Ex. D, 11:25-12:05, 75:21-76:11.)

111. The wrestling coach told Tommy he had to be more mature. (Ex. D, 77:02-77:04.)

112. Plaintiff missed six days of wrestling following the suspension from school. (Ex. D, 73:20-73:25.)

113. Tommy was given his captain position back around January 2020 and maintained it through his senior year of high school. (Ex. D, 19:09-19:13.)

114. During the period he was not captain, Tommy could not lead the team in stretching and other exercises. (Ex. D, 76:12-76:20, 79:04-79:16.)

115. Even when not acting as captain, Tommy was still allowed to participate in team matches in the same capacity as when he was captain. (Ex. D, 79:04-79:16.)

Dated: Carle Place, New York
      January 13, 2023

SOKOLOFF STERN LLP
*Attorneys for Defendants*

By: _____
     ADAM I. KLEINBERG
     AARON T. SMALLETS

179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 190172