UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ATHANASIOS VLAHOPOLOUS, AND
ELIZABETH VLAHIPOLOUS, as sole guardian
of the infant minor ATHANASIOS
VLAHOPOLOUS, born on December 13, 2002,

                              Plaintiffs,                      **ORDER**
                                                    CV 21-0063 (ARL)

        -against-

ROSLYN UNION FREE SCHOOL DISTRICT,
et. al,

                              Defendants.
-----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Plaintiff Athanasios Vlahopolous ("Plaintiff") brings this action against Defendants Roslyn Union Free School District (the "District"), Scott Andrews, and Christopher Roth (collectively "Defendants") asserting claims pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Before the Court is Defendants' motion for summary judgment seeking dismissal of each of Plaintiff's claims. ECF No. 73. For the reasons set forth below, Defendants' motion for summary judgment is granted, and Defendants' motion for Rule 11 sanctions is denied.

**BACKGROUND**

      **I.**      **Factual Background**

      The following facts are drawn from Defendants' Local Rule 56.1(a) Statement and are uncontested unless otherwise noted. At the outset the Court notes that "in arriving at these undisputed facts, we reject as insufficient: (1) conclusory or non-responsive objections; (2) objections that omit citations to admissible evidence; and (3) responses that simply advocate for a different spin on otherwise uncontroverted facts." *Hartley v. Rubio*, 785 F. Supp. 2d 165, 184-

85 (S.D.N.Y. 2011); *see also Wallen v. Teknavo Grp.,* No. 12 Civ. 6196 (MKB) (SJB), 2019 U.S. Dist. LEXIS 55190, 2019 WL 1435879, at *12 n.19 (E.D.N.Y. Mar. 30, 2019) ("The Court thus deems admitted Defendant's statements to which Plaintiff has failed to properly object or otherwise provide admissible evidence"); *Garvey v. Town of Clarkstown*, No. 13-CV-8305, 2018 U.S. Dist. LEXIS 28813, 2018 WL 1026379, at *9 (S.D.N.Y. Feb. 22, 2018), *aff'd*, 773 F. App'x 634 (2d Cir. 2019) ("There are also numerous instances where, although plaintiff 'denies' a fact in form, he does not actually controvert the fact in substance. In all such instances, defendants' asserted facts are deemed admitted to the extent they are properly supported and to the extent plaintiff's dispute is not in fact supported by the exhibits he cites"). Applying these principles, the bulk of Defendants' undisputed facts are deemed admitted.

Plaintiff Athanasios Vlahopoulos attended the District's Roslyn High School from 2017-2021. Def. Rule 56.1 Stmt. ¶7. Plaintiff Athanasios Vlahopoulos is commonly known as "Tommy" at Roslyn High School. *Id.* at ¶80.

The District is a public-school district located in Roslyn, New York. *Id.* at ¶6. Defendant Scott Andrews served as the Roslyn High School Principal and defendant Christopher Roth served as the Roslyn High School Dean of Students during Plaintiff's years as a student at Roslyn High School. *Id.* at ¶8. The District has a number of policies in place which it claims govern the actions taken by Defendant Roth in this action. According to Defendants, all District families are aware of these policies. BOE Policy 5300.30, entitled Prohibited Student Conduct, provides, in part:

> A student may be subject to disciplinary action, up to and including suspension from school, when the student engages in the following conduct on school property or at a school function:
> A. Engages in conduct that is disorderly. Examples of disorderly conduct include, but are not limited to:
> 1. Fighting or threatening behavior.

    2. Disturbing any lawful assembly or meeting of persons.
    3. Creating a hazardous physically offensive condition by any act that serves no legitimate purpose.
    4. Defacing school property.
    5. Running in hallways.
    6. Making unreasonable noise.
    7. Using language or gestures that is profane, lewd, vulgar or abusive.
    8. Obstructing vehicular or pedestrian traffic.
    9. Engaging in any willful act which disrupts the normal operation of the school community.
    10. Trespassing. Students are not permitted in any school building, other than the one they regularly attend, without permission from the administrator in charge of the building.
    11. Computer/electronic communications misuse, including any unauthorized use of personnel electronic equipment, such as, but not limited to, cell phones, iPods, iPads and computers, software, or an Internet/Intranet account; accessing inappropriate websites; or any other violation of the District's Acceptable Use Policy.
    12. Using skates, skateboards, roller blades, scooters or bicycles on school grounds. This shall not prohibit students from appropriately riding their bicycles to and from school in a non-disruptive or disorderly manner and securing same in the designated area at the indicated place/time.
    13. Violating cafeteria behavioral expectations. Food is to be eaten only in the cafeteria or designated areas. Students are expected to sit on chairs or benches and not to have their feet on tables. There is to be no throwing or misuse of food.
    14. Violating traffic regulations on school property.

Def. Rule 56.1 Stmt. ¶7.   at ¶38.  BOE Policy 5300.30(E) prohibits conduct that endangers the safety, morals, health or welfare of others, including but not limited to bullying and cyberbullying.  *Id.* at ¶39.  BOE Policy 5300.30(H) prohibits off-campus misconduct such as cyberbullying that endangers the health and safety of students or staff within the school, or creates or would foreseeably create a risk of substantial disruption in within the school environment.  *Id.* at ¶40.

    On November 28, 2017, Defendants Andrews and Roth issued a memo to all District families advising of an update to the student code of conduct.  *Id.* at ¶20.  The November 28, 2017 memo addressed the District's concerns with student usage of electronic smoking devices.  *Id.* at ¶21.  The code of conduct was updated to prohibit the use and/or possession of electronic

3

smoking devices on campus. *Id.* at ¶22. The high school's student handbook (the "Student Handbook") provides, under the section "Smoking and Vaping:"

> Smoking and vaping anywhere on school property is strictly prohibited according to Board of Education policy and New York State Law. Any person violating this law is subject to a civil fine and school disciplinary action

*Id.* at ¶23. The Student Handbook also provides, under the section "Illegal Substances:"

> Students may not be under the influence or any illegal substance or alcohol. Other illegal substance violations include:
> • Smoking or any tobacco product and use is not permitted anywhere on school grounds
> • Possession of controlled substances or illegal substances and related paraphernalia
> • Distribution or attempt to distribute, or possession with the intent to distribute, a non-controlled substance upon the representation that the substance is a controlled, dangerous substance.
> • Alcohol consumption by students.

*Id.* at ¶24. District Board of Education ("BOE") Policy 5300.30(E)(13) similarly prohibits the use or possession or electronic smoking devices. *Id.* at ¶25. Subsection (E)(14) of BOE Policy 5300.30 prohibits the possession, consumption, sale, or distribution of illegal substances, inclusive of marijuana products. *Id.* at ¶26.

BOE Policy No. 5300.60 is entitled "Student Searches and Interrogations." *Id.* at ¶27. Under BOE Policy 5300.60, any school official authorized to impose a disciplinary penalty on a student may question a student about an alleged violation of law or the district code of conduct. *Id.* at ¶28. Under BOE Policy 5300.60, school officials questioning students shall advise each student why he/she is being questioned, but are not under an obligation to contact a student's parents before such questioning. *Id.* at ¶29. BOE Policy 5300.60 also provides that an authorized school official, including district security officials, may conduct a search of students and their belongings if they have reasonable suspicion to believe the search will result in evidence that the student violated the law or District code of conduct. *Id.* at ¶30. Under BOE

4

Policy 5300.60, searches will be limited to the extent necessary to locate the evidence sought and, whenever practicable, conducted in the privacy of administrative offices.  *Id.* at ¶31. Further, as noted by Plaintiff, BOE Policy 5300.60(B), entitled Strip Searches, provides:

> A strip search is a search that requires a student to remove any or all of his/her clothing. For purposes of this provision, "clothing" does not include an outer coat or jacket. Searching a student's shoes, socks and sweatshirt, and the exposure of a student's ankles and waistband does not constitute a strip search where the student is not asked to remove his/her shirt or pants.
>
> Strip searches are intrusive in nature and are not permissible. If school authorities believe there is an emergency situation that could threaten the health or safety of others, the student under reasonable suspicion of having engaged or engaging in unlawful or otherwise proscribed activity shall, to the extent practicable, be isolated and secured. Police and parents will be contacted immediately.

Pl. Rule 56.1 Stmt. ¶31.

Throughout high school Plaintiff was well known to school administrators.  In Plaintiff's freshman year, a District gym teacher found Plaintiff and his friend in the bathroom stalls of the gym locker room in between class periods and his friend was found using a nicotine vape. *Id.* at ¶48-50.  Plaintiff was brought to the office of the Athletic Director, Mr. Brostowski, where he was searched. *Id.* at ¶51-52.  The search consisted of making Plaintiff empty his pockets from the inside out (described as looking like "elephant ears") and pull his socks down over his shoes. *Id.* at ¶53.  The Athletic Director sat behind a desk and did not put his hands in Plaintiff's pockets or on his socks. *Id.* at ¶56.  After the Athletic Director completed the search, Plaintiff was brought to the nurse's office and because the nurse thought he had bloodshot eyes his bag was searched. *Id.* at ¶¶59, 60.  Plaintiff was not suspended or disciplined. *Id.* at ¶62.

Next, in January 2019, Plaintiff admits he got "a little aggressive" in a cafeteria incident, grabbing another student by the shirt and pulling him around, resulting in a three-day suspension. *Id.* at ¶12, 13. Plaintiff was also disciplined for skipping class in March and April 2019. *Id.* at

5

¶14.  In September 2019, at the start of Plaintiff's junior year, Plaintiff was suspended for throwing a granola bar across a classroom and hitting another student in the eye.  *Id.* at ¶15-17.  In October 2019, Plaintiff skipped one of his classes for a full week and received five days of detention.  *Id.* at ¶18, 19.

On November 19, 2019, Plaintiff was involved in an incident with two other students.  The students accused Plaintiff of bullying.  Following the report, Defendant Roth viewed social media videos Plaintiff posted that showed Plaintiff and his friends bullying another student.  *Id.* at ¶65.  Additionally, Defendant Roth reviewed these events on the high school's security cameras.  *Id.* at ¶66.  On this same day, Defendant Roth also viewed images of drug paraphernalia provided to him by other students from a social media account using the name "Tommy V."  *Id.* at ¶79.  After viewing these images, Defendant Roth was concerned that Plaintiff could have been selling THC cartridges at Roslyn High School because posting drug paraphernalia on social media is a one way for students to communicate they are selling drugs.  *Id.* at ¶¶ 82, 83.

Defendant Roth called Plaintiff into his office around the beginning of 7th period.  *Id.* at ¶85.  According to Defendants, Defendant Roth had Plaintiff wait in a room next to his office while he spoke with two of Plaintiff's friends. Plaintiff contends that this is a disputed issue of fact however Plaintiff fails to cite any evidence in the record contradicting this assertion.  Indeed, Plaintiff "disputes" each of Defendants' factual assertions regarding the search, despite testimony from Plaintiff and each of the Defendants supporting the statement.  Accordingly, the undisputed facts set forth in Defendants' Rule 56.1 Statement are deemed admitted.  During the beginning of eighth or ninth period Defendant Roth spoke with Plaintiff.  *Id.* at ¶87.  Defendant Roth did not strip search Plaintiff and did not put his hands on Plaintiff.  *Id.* at ¶¶ 88, 89.

Defendant Roth had the District's Director of Security, Keith Macias, present with him while meeting with Plaintiff. *Id.* at ¶90. Macias did not strip search or put his hands on Plaintiff. *Id.* at ¶¶91, 92. Defendant Roth had Plaintiff remove his shoes and roll down his socks below his heel. *Id.* at ¶93. Plaintiff was asked if he had a t-shirt underneath his hoodie and when he said yes, Plaintiff was asked to take off his hoodie, but not the t-shirt underneath. *Id.* at ¶95. There was never a time Plaintiff was not wearing the t-shirt in Dean Roth's office. *Id.* at ¶96. Dean Roth asked Plaintiff to lift his t-shirt, but at no point was his t-shirt off . *Id.* at ¶97. Dean Roth also had Plaintiff raise the legs of his sweatpants to his knees. *Id.* at ¶98. Plaintiff was also asked to empty his pants pockets inside-out so they looked like elephant ears but he was not asked to pull his waistband out from his pants. *Id.* at ¶¶99, 100. Plaintiff did not remove his pants at any point during the search. *Id.* at ¶101. Dean Roth also searched Plaintiff's two friends separately. *Id.* at ¶102. Dean Roth found drug paraphernalia in one friend's socks when he met with them and that student was suspension for possession of a THC cartridge. *Id.* at ¶¶ 103, 104.

## PROCEDURAL HISTORY

Plaintiff commenced this action on January 6, 2021. ECF No. 1. Plaintiff filed an Amended Complaint on May 6, 2021. ECF No. 20. The Amended Complaint contains four causes of action: violation of Fourth amendment right to be free of unlawful searches and seizures (Count One), violation the right to due process pursuant to the Fifth and Fourteenth Amendments (Count Two), deprivation of liberty without due process against the District (Count Three), and Violation of the Equal Protection Clause (Count Four). *Id.* Defendants moved to dismiss the claims asserted against them. ECF Nos. 21, 23. Judge Brown heard argument on Defendants' motion to dismiss, and on May 28, 2021 he dismissed all claims against the Januszewski and Pazooki defendants, as well as Defendant Brown. ECF No. 26. Plaintiff

Elizabeth Vlahopoulos was also dismissed from the case. *Id*. As to the remaining claims against the Roslyn School District, Scott Andrews and Christopher Roth, Judge Brown granted their motion to dismiss Plaintiff's Fifth Amendment claim and Procedural Due Process Claim. Judge Brown denied Defendants' motion to dismiss Plaintiff's Fourth Amendment Claim, the Qualified Immunity Claim, the *Monell* Claim and the Equal Protection Claim. *Id*.

On October 19, 2021 the parties consented to this Court's jurisdiction for all purposes. ECF No. 40. On February 14, 2023, Defendants filed a letter motion seeking permission to file a motion for summary judgment. ECF No. 65. Plaintiff failed to oppose the request, accordingly this Court waived the requirement of a pre-motion conference and set a briefing schedule on Defendants' motion for summary judgment. Defendants' motion for summary judgment was filed on May 26, 2023. ECF No. 71. Plaintiff opposes Defendants' motion.[1] ECF No. 70.

## DISCUSSION

### I. Standard of Law

Defendants have moved for summary judgment. "'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.*, 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). If

---

[1] Plaintiff failed to follow the instructions set forth in this Court's Order of March 3, 2023 and filed his opposition on ECF rather than serving the opposition and filing upon the completion of briefing in accordance with this Court's bundle rule.

8

there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

When the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). However, even when a

9

non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The Court must, nevertheless, assure itself that based on the undisputed material facts summary judgment is warranted. *Id*. at 486.

## II. Analysis

### a. Abandoned Claims

In their motion for summary judgment Defendants argued, *inter alia*, that the there was no Fourth Amendment seizure, that defendant Andrews was not present for the searches and therefore could not be held liable, that there is no possible Equal Protection claim because Plaintiff has no evidence that Plaintiff was searched in a different way than other similarly situated students, that there is no viable *Monell* claim against the District because Plaintiff has failed to identify a District policy, practice or custom that violated his constitutional rights, and that sanctions are warranted under Rule 11 because of Plaintiff's repeated reference to a strip search which never occurred. Def. Mem. at 10, 12, 13, 16, 16-19. Plaintiff has failed to address any of these arguments in opposition to Defendants' motion for summary judgment. Def. Reply Mem at 5.

With respect to Defendants' arguments that there was no Fourth Amendment seizure, that defendant Andrews was not present for the searches, that there is no possible Equal Protection claim, and that there is no viable *Monell* claim against the District those claims are deemed abandoned. *See, e.g., Adams v. New York State Educ. Dep't,* 752 F. Supp. 2d 420, 426 (S.D.N.Y. 2010) (dismissing plaintiffs' race discrimination and age discrimination claims as abandoned where "[Plaintiffs' opposition] papers fail[ed] to address substantive grounds raised by

10

[d]efendants' motions [to dismiss], thereby supporting a finding that the underlying claims have been abandoned.") *aff'd sub nom. Ebewo v. New York State Educ. Dep't*, 460 Fed. Appx. 67 (2d Cir. 2012); *Gill v. Phx. Energy Mgmt.*, No. 15-CV-1102, 2016 U.S. Dist. LEXIS 138093, at *14-15 (E.D.N.Y. Sep. 30, 2016) (deeming ADA retaliation claim abandoned, because "plaintiff neither dispute[d] Defendant's arguments, nor defend[ed] th[e] claim in anyway" and stating that "[w]here, as here, Plaintiff fails to address Defendant's arguments in his opposition, the Court deems Plaintiff's silence as a concession that Plaintiff is abandoning his claim."). Thus, all that remains of Plaintiff's substantive claims is his claim for unlawful search against Defendant Roth.

With respect to Defendants' motion for sanctions pursuant to Rule 11, the rule states:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, that a position is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation,

Fed. R. Civ. P. 11(b)(1), and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* Rule 11(b)(2). "In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a 'reasonably inquiry' into the basis of a filing." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.,* 73 F.3d 1253, 1257-58 (2d Cir. 1996) (citing *Business Guides, Inc. v. Chromatic Commc'n Enters., Inc.,* 498 U.S. 533, 548, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991)).  A court must "avoid hindsight and resolve all doubts in favor of the signer." *Hutter v. Countrywide Bank, N.A.,* 41 F. Supp. 3d 363, 387 (S.D.N.Y. 2014) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)).

Defendants have argued that Plaintiff's repeated characterization of the search conducted by Defendant Roth as a "strip search" and Plaintiff's counsel statement that Plaintiff was "sexually assaulted" in the care of Defendants have gone too far. According to Defendants, Plaintiff was never asked to remove his t-shirt, pants or underwear, and according to Plaintiff's own testimony the search was limited to turning his sweatpants pockets inside out, removing his shoes, roll down his socks and remove his baggy sweatshirt. Ex. D, p. 55. The Court notes that even after the filing of the motion for summary judgment containing the motion for Rule 11 sanctions, Plaintiff continues to refer to the search as a "strip search." *See. e.g.,* Pl. Resp. to Rule 56.1 at ¶ 62 ("Although plaintiff was not disciplined, he was removed from a bathroom stall and forced to endure defendants adapted form of strip search"); ¶ 85 ("defendant Roth decided to search plaintiff for a JUUL, yet again! Further consider that the strip search had nothing to do with the suspension and the search yet again yielded no contraband with regard to plaintiff"). Defendants seek sanctions for Plaintiff's repeated mischaracterization of the events leading up to this action. Plaintiff has failed to respond to Defendants' motion for Rule 11 sanctions.

However, Rule 11 also provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c). Here, Defendants have made their Rule 11 motion as part of their motion for summary judgment. Accordingly, Defendants' motion is denied with leave to file as a separate motion. *See Williamson v. Recovery Ltd. P'ship,* 542 F.3d

12

43, 51 (2d Cir. 2008) (affirming the district court's denial of the defendants' Rule 11 motion where the defendants "failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule"); *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-90 (2d Cir. 1998) (reversing the district court's decision to impose sanctions where the movant "included its request for sanctions in its letter requesting a Rule 54(b) certification, thereby failing to give [the non-movant] the separate notice referred to in Rule 11"); *Begonja v. Vornado Realty Tr.,* 159 F. Supp. 3d 402, 414-15 (S.D.N.Y. 2016) ("[D]efendants' request for attorneys' fees under Rule 11 was made together with the motion to dismiss rather than as a separate motion, and for that reason alone it must be denied."); *see also Intravaia v. Rocky Pt. Union Free Sch. Dist.,* No. 12-CV-0642 (DRH)(AKT), 2014 U.S. Dist. LEXIS 176235, 2014 WL 7338849 (E.D.N.Y. Dec. 22, 2014) (stating that "service of a separate motion for sanctions" is necessary to comply with Rule 11's safe harbor provision) (citing *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd*., 682 F.3d 170, 175 (2d Cir. 2012)).

### b. Fourth Amendment Unlawful Search Claim

As noted above, Plaintiff's only remaining claim is his claim for unlawful search in violation of the Fourth Amendment. The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also Kia P. v. McIntyre,* 2 F. Supp. 2d 281, 292 (E.D.N.Y. 1998) ("The Fourth Amendment prohibition against unreasonable searches and seizures is the quintessential safeguard of one's liberty."). The "[Fourth] Amendment's prohibition against unreasonable searches and seizures applies to searches conducted by public school officials."

13

*New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). However, "'while children assuredly do not shed their constitutional rights . . . at the schoolhouse gate, . . . the nature of those rights is what is appropriate for children in school.'" *Morse v. Frederick*, 127 S. Ct. 2618, 2627, 168 L. Ed. 2d 290 (2007) (quoting *Veronica Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655-56, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995) (internal quotations omitted)) (omissions in original). It is well-established that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *T.L.O.*, 469 U.S. at 333; *see also Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364, 371, 129 S. Ct. 2633, 174 L. Ed. 2d 354.

In determining whether a school official's search of a student is reasonable, "courts apply a twofold inquiry: first, whether the action was justified at its inception; second, whether the search as actually conducted was reasonable related in scope to the circumstances which justified the interference in the first place." *Faber v. Monticello Cent. Sch. Dist.*, No. 10 Civ. 1812, 2013 U.S. Dist. LEXIS 79869, 2013 WL 2450057, at *3 (S.D.N.Y. June 6, 2013) (quoting *T.L.O.*, 469 U.S. at 337, 105 S. Ct. at 742).

A search is "justified at its inception" where there are "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42; *I.S. by and through Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 598 (N.D.N.Y. 2020). "The requirement of reasonable suspicion is not a requirement of absolute certainty but only of sufficient probability." *Phaneuf v. Fraikin*, 448 F.3d at 596. The Supreme Court has described this reasonable suspicion standard as requiring "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist.*, 557 U.S. at 371; *Faber*, 2013 U.S. Dist. LEXIS 79869 (requiring student to empty pockets was "minimally invasive" and supported by a reasonable suspicion he had drugs in his possession).

The search "must [also] be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Phaneuf*, 448 F.3d at 596 (quoting *T.L.O.*, 469 U.S. at 341). A search "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.,* 469 U.S. at 342 (footnote omitted). "[A]s the intrusiveness of the search of a student intensifies, so too does the standard of Fourth Amendment reasonableness." *Phaneuf*, 448 F.3d at 597 (quoting *Cornfield*, 991 F.2d at 1321).

In the Amended Complaint, Plaintiff alleges that "[o]n or about November 19, 2019, defendant CHRISTOPHER ROTH, the dean of students, in his official capacity conducted a strip search of plaintiff ATHANASIOS VLAHOPOULOS and two other students, this incident is one of a series of incidents that are referred to in this complaint herein as the "subject matter incidents."[2] Am. Compl. 163. Plaintiff further alleges that "Defendants, in physically strip searching Plaintiff, unlawfully subjected Plaintiff to excessive, unreasonable, and unnecessary removal of his clothing and thereby cause serious and long-term emotional and psychological harm." *Id*. at 169. However, the undisputed facts indicate that no strip search of Plaintiff was ever conducted. Plaintiff was asked to remove his shoes[3] and sweatshirt (he was wearing a t-shirt underneath) and to pull his shirt up to reveal the waistband of his pants and to remove his socks up to the heel. Def. Rule 56.1 Stmt. ¶¶93, 95, 99. Plaintiff was never touched, and at not time was he asked to remove his pants or t-shirt. *Id*. at ¶¶89, 92, 97, 101.

---

[2] According to Defendants there were two separate incidents which Plaintiff claims amounted to unlawful searches first in Plaintiff's freshman year of high school which was the 2017-2018 school year and next in November 2019, however, the allegations before the Court relate solely to the November 2019 event, and therefore the Court's analysis shall be so limited.

[3] The Second Circuit has determined that the removal of a person's shoes does not amount to a strip search under the Fourth Amendment. *See, e.g., United States v. Nieves*, 609 F.2d 642, 646 (2d Cir.1979) (holding that the removal of a person's shoes during a routine border search was not a strip-search).

Defendants argue that the search of Plaintiff by Defendant Roth in November 2019 was justified at its inception because Defendant Roth had been informed that Plaintiff had bullied other students, had posted it on line and that Plaintiff was selling drugs in school.  Def. Mem. at 8.  Defendant Roth then undertook an independent investigation which included reviewing social media posts and camera surveillance.  *Id*.  Defendants further argue that the search was reasonable in scope because the search "only extended to those areas where evidence of alleged drug paraphernalia could be located, including in Plaintiff's socks, his hoodie, pockets, and the bottom of his pants.  *Id.* at 9.

In response, rather than address each of these specific factual assertions, Plaintiff argues that "[w]hile Plaintiff contends that Defendant Roth had the authority for the initial search, Plaintiff does not agree based on the relevant facts that Defendants were authorized to search in any way they desired, using whatever means they wished."  Pl. Mem. at 9.  Additionally, Plaintiff argues "that Defendant Roth used unauthenticated information and documents, social media, student informants and baseless accusations to unreasonably search Plaintiff."  Pl. Mem. at 9.  However, as discussed above, "The requirement of reasonable suspicion is not a requirement of absolute certainty but only of sufficient probability." *Phaneuf*, 448 F.3d at 596.  The Supreme Court has described this reasonable suspicion standard as requiring "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist.*, 557 U.S. at 371; *see also Faber*, 2013 U.S. Dist. LEXIS 79869 ("minimally invasive search of Plaintiff's pockets was supported by a reasonable suspicion that Plaintiff was high and thus had drugs in his possession"); *Binder v. Cold Spring Harbor Cent. Sch. Dist*., No. 09 Civ. 4181 (SJF) (ARL), 2010 U.S. Dist. LEXIS 83493, 2010 WL 3257708, at *6 (E.D.N.Y. July 19, 2010) (Report & Recommendation) (holding that reasonable suspicion existed to search plaintiff's backpack

where assistant principal was informed by another teacher that plaintiff smelled of marijuana), adopted 2010 U.S. Dist. LEXIS 83485, 2010 WL 3257849 (E.D.N.Y. Aug. 13, 2010); *MacIneirghe v. Bd. of Educ. of E. Islip Union Free Sch. Dist.*, No. 05 Civ. 4324 (JFB) (AKT), 2007 U.S. Dist. LEXIS 61841, 2007 WL 2445152, at *10 (E.D.N.Y. Aug. 22, 2007) (holding that reasonable suspicion to conduct a minimally invasive search existed where plaintiff was found in the school parking lot in violation of school rules, appeared nervous, and was wiping his nose and rubbing his eyes). Similarly, here, the Court finds that the minimally invasive search conducted by Defendant Roth, consisting solely of the removal of shoes and a sweatshirt, was supported by Defendant's discovery of drugs in the possession of Plaintiff's two friends coupled with Defendant's review of social media posts indicating Plaintiff was in the possession of drugs. Def. Rule 56.1 Stmt. ¶¶80, 93-100, 103.

Turning next to the question of whether the search was reasonable in scope, the Court concludes that the search of Plaintiff, which was conducted in a private room and limited to the removal of shoes and a sweatshirt, combined with the emptying of pockets was reasonable in scope in light of the seriousness of the violation. Accordingly, Defendants' motion for summary judgment dismissing this claim is granted.

### c. Qualified Immunity

Defendants also contend that Defendant Roth is entitled to qualified immunity, however, since the Court has found that no violation of the Fourth Amendment has occurred, the Court does not reach Defendants' argument regarding qualified immunity.

.

Dated: Central Islip, New York  **SO ORDERED:**
      March 22, 2024

          _____/s_____
          ARLENE R. LINDSAY
          United States Magistrate Judge